IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. _____

| | |
|---|---|
| **A K M WAHIDUZZAMAN**<br><br>**Plaintiff,**<br><br>vs.<br><br>**MOHAMMAD NAKIBUR RAHMAN,**<br><br>**Defendant.** | **COMPLAINT**<br>(JURY TRIAL DEMANDED) |

A K M WAHIDUZZAMAN files this Complaint against MOHAMMAD NAKIBUR RAHMAN pursuant to Rule 7 of the Federal Rules of Civil Procedure, and alleges:

## THE PARTIES

1. A K M Wahiduzzaman ("Wahiduzzaman") is an individual person and is a lawful resident of the state of Texas.

2. Upon information and belief, Mohammad Nakibur Rahman ("Rahman") is an individual person and is a citizen of Cumberland County, North Carolina.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and 28 USCS § 1391, in that the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs, and is between citizens of different states. Plaintiff is an individual domiciled in and a citizen of the State of Texas. Defendant is an individual domiciled in and a citizen of the State of

North Carolina, residing in Fayetteville, North Carolina. Accordingly, complete diversity of citizenship exists between the parties.

2. This Court has personal jurisdiction over Defendant pursuant to because Defendant is a resident of the State of North Carolina and resides in Fayetteville, North Carolina, within this judicial district.

3. Venue is proper in the United States District Court for the Eastern District of North Carolina, pursuant to 28 U.S.C. § 1391(b)(1), because the Defendant resides within this District and a substantial part of the events or omissions giving rise to the claims occurred herein.

## NATURE OF THE CASE

4. This case is about the Defendant defaming Plaintiff though malicious and false claims that Plaintiff hacked into the Twitter (X) account of Dr. Shafiqur Rahman, known as the Ameer ("Ameer") of the Bangladeshi fundamentalist Islamic political party, Jamaat-e-Islami and in doing so published statements that were extremely derogatory to women causing significant public backlash, particularly among women in Bangladesh.

## BACKGROUND

5. In support of the allegations herein and to provide relevant context for the claims asserted, Plaintiff respectfully sets forth the following background regarding his personal, academic, and professional history.

6. Plaintiff A K M Wahiduzzaman is a citizen of Bangladesh who lawfully entered the United States as a refugee on January 16, 2025, through the International Organization for Migration, with approval from the United States Citizenship and Immigration Services (USCIS).

7. Plaintiff currently resides in the United States and is employed as Director of Digital Marketing at Zunivan Holdings Inc., Houston, Texas, a position he has held since March 2025.

8. Plaintiff is an accomplished academic, environmental advocate, and human rights defender. Prior to his forced departure from Bangladesh, he served as an Assistant Professor in the Department of Geography and Environment at the National University of Bangladesh, where he taught and conducted research.

9. Before his tenure at the National University, Plaintiff held teaching positions at Azizul Hoque College and Dhaka College and also served as an Assistant Programmer with Arab Bangladesh Bank Limited.

10. Plaintiff earned both his undergraduate and graduate degrees in Geography and Environment from Jahangirnagar University, where he actively participated in academic and student leadership initiatives.

11. In addition to his academic career, Plaintiff has been engaged in environmental protection, human rights advocacy, and pro-democracy efforts. He has participated in professional and civil society organizations including the Bangladesh National Geographical Association, the Human Rights Defenders Network, and the Anti-Death Penalty Asia Network (ADPAN).

12. As a writer and commentator, Plaintiff published articles critical of government corruption, authoritarian practices, and environmentally harmful development projects. These peaceful expressions of opinion led to government retaliation and politically motivated criminal prosecutions in Bangladesh.

13. Following his suspension and later dismissal from his university position, Plaintiff was subjected to imprisonment, harassment, and continued threats from state authorities. Fearing for his safety, he fled Bangladesh in 2016 and lived in Malaysia before obtaining refugee status in the United States.

14. Since arriving in the United States, Plaintiff has continued to work productively and lawfully, contributing his expertise in digital marketing and continuing his commitment to civic and humanitarian causes.

15. Plaintiff's background, academic achievements, and longstanding advocacy for human rights and environmental protection demonstrate his integrity, professional reputation, and good character.

16. The foregoing background establishes Plaintiff's professional and personal history and provides context for the events and injuries giving rise to this action. Plaintiff now sets forth the facts underlying his claims in greater detail below.

## FACTUAL ALLEGATIONS

17. Plaintiff is the Information and Technology Affairs Secretary of the Bangladesh Nationalist Party in a voluntary capacity.

18. Plaintiff is lawfully residing in the United States as a refugee.

19. Plaintiff is employed as Director of Digital Marketing at Zunivan Holdings, Inc., in Texas, a position he has held since March 2025.

20. On January 12, 2026, the Ameer of Jamaat-e-Islami gave an interview to Al Jazeera Television.

21. In the interview, the Ameer stated that his party did not nominate any women for parliamentary seats in the upcoming national election of Bangladesh and that no woman could ever become the leader of that political party.

22. The Ameer's remarks generated significant public backlash, particularly among women in Bangladesh.

23. On January 30, 2026, a post was made from the Ameer's X account that included highly offensive remarks about working women.

24. Subsequently, Jamaat-e-Islami claimed that the X post was not authored by their Ameer but was published as a result of his X account being hacked.

25. On January 31, 2026, at approximately 1:03 PM Central Time, Defendant posted on his Facebook profile claiming that the hacking incident had been reported to the police with all supporting evidence.

26. Later that same day, at approximately 4:49 PM Central Time, Defendant made another Facebook post stating that all evidence of the account hacking had been submitted to the police and a case had been filed.

27. Upon information and belief, no criminal case was filed, but Jamaat-e-Islami submitted a First Information Report at a police station, in Dhaka, Bangladesh, attaching their own internal forensic report.

28. The forensic report identified a specific suspect by name, photograph, and personal details.

29. Plaintiff's name, identity, or involvement was not mentioned anywhere in the forensic report.

30. No evidence linking Plaintiff to the alleged hacking incident was included in the forensic report.

31. On January 31, 2026, at approximately 11:13 PM Central Time, Defendant shared a live video of a press conference from the official Facebook page of Jamaat-e-Islami.

32. In the aforesaid press conference, Jamaat-e-Islami publicly disclosed all alleged evidence related to the hacking of their Ameer's X account and explicitly identified the individual they suspected, including name and photograph.

33. The individual identified in the press conference was not Plaintiff.

34. On February 1, 2026, at approximately 1:33 PM Central Time, Defendant posted a video summarizing the hacking incident.

35. No reference to plaintiff was made in that video.

36. On February 1, 2026, at approximately 3:33 PM Central Time, Defendant posted another detailed video presentation on Facebook explaining the forensic analysis conducted by Jamaat-e-Islami regarding the hacking incident.

37. Once again, Plaintiff's name was not mentioned, nor was there any evidence linking plaintiff to the incident presented.

38. On February 1, 2026, at approximately 8:04 PM Central Time, Defendant Mohammad Nakibur Rahman appeared as a guest on a live broadcast of Time Television, a New York–based Bengali online television channel viewed by the Bangladeshi diaspora worldwide, during which he, on camera, made the defamatory statements described herein.

39. On February 1, 2026, at approximately 10:50 PM Central Time, Defendant uploaded a video of his statement broadcast on Time Television to his Facebook profile.

40. On February 2, 2026, at approximately 2:12 PM and 2:14 PM Central Time, respectively, edited versions of the Defendant's statements were uploaded by Time Television to its YouTube and Facebook channels.

41. On February 2, 2026, at approximately 5:06 PM Central Time, Plaintiff was informed through a message from an acquaintance that defendant had made a video statement on a New York-based online television platform, Time Television.

42. In the video statement, Defendant publicly labeled Plaintiff a "cyber terrorist."

43. In the same video, without providing any evidence, Defendant directly accused Plaintiff, along with two other individuals, of hacking the X account of the Ameer of Jamaat-e-Islami.

44. The YouTube video containing the defamatory statement is available at https://www.youtube.com/watch? v=VMNyfSCP1Ys.

45. On information and belief, the same video was also uploaded to the Facebook page of the online television platform, Time Television, at https://www.facebook.com/reel/1835743573804044.

46. Defendant also uploaded the same video to his personal Facebook profile at https://www.facebook.com/reel/2711022405924041.

47. At the time Defendant made the statement accusing plaintiff, Defendant was in possession of all relevant information and forensic reports related to the alleged hacking incident.

48. At the time Defendant made the statement accusing plaintiff, Defendant knew that plaintiff was not involved in the hacking of the Ameer's Tweeter (X) account.

49. Nevertheless, defendant deliberately and maliciously made false accusations against plaintiff and publicly labeled plaintiff a "cyber terrorist."

50. As a direct and proximate result of defendant's false, defamatory, and malicious statements, plaintiff has suffered severe mental and emotional distress.

51. Plaintiff's social reputation has been seriously harmed.

52. Plaintiff's family life has been significantly disturbed and subjected due to this extreme anxiety producing event.

53. There is a substantial risk of adverse impact on Plaintiff's current employment.

54. There is a reasonable fear that these defamatory allegations may negatively affect Plaintiff's immigration and residential status adjustment process in the United States.

**FIRST CLAIM FOR RELIEF**
*DEFAMATION PER SE*
*(Youtube publication)*

55. The previous paragraphs are realleged and incorporated by reference.

56. Defendant made a false statement of fact concerning plaintiff.

57. On or about February 1, 2026, Defendant made a video statement on a New York-based online television platform publicly labeling plaintiff a "cyber terrorist" and accusing Plaintiff of hacking the X account of the Ameer of Jamaat-e-Islami.

58. On February 2, 2026, at approximately 2:12 PM and 2:14 PM Central Time, respectively, edited versions of the Defendant's statements were uploaded by Time Television to its YouTube and Facebook channels.

59. These statements are false because Plaintiff did not hack the Twitter (X) account and is not a "cyber terrorist."

60. Defendant knew these statements were false.

61. Defendant uploaded the video containing the false statement to YouTube at https://www.youtube.com/watch? v=VMNyfSCP1Ys.

62. The YouTube video was published to a wide audience on a publicly accessible platform.

63. The false statement caused injury to Plaintiff's reputation.

64. The statement falsely accused Plaintiff of serious criminal conduct, specifically hacking and "cyber terrorism."

65. Such accusations are defamatory per se and injure Plaintiff's reputation in the community.

66. Plaintiff's social reputation has been seriously harmed as a result of the false statement.

67. Defendant acted with actual malice.

68. Defendant deliberately and maliciously made false accusations against plaintiff despite knowing plaintiff was not involved in the hacking og of the Ameer's Twitter(X) account.

69. Plaintiff suffered damages.

70. As a direct and proximate result of Defendant's false and defamatory statement, plaintiff has suffered severe mental and emotional distress, serious harm to social reputation, extreme anxiety and disturbance to family life, substantial risk of adverse impact on current employment, and reasonable fear of negative impact on immigration and residential status adjustment process.

71. Plaintiff is entitled to recover damages for the full extent of this mental anguish and emotional suffering, as well as for any associated medical expenses, loss of earning capacity, and other consequential losses. Defendant's conduct was willful, wanton, and performed with reckless disregard for Plaintiff's rights and dignity, thereby justifying an award of punitive damages to deter such conduct and to punish its egregious nature.

## SECOND CLAIM FOR RELIEF
### *DEFAMATION PER SE*
### *(Facebook Television Platform publication)*

72. The previous paragraphs are realleged and incorporated by reference.

73. Defendant made a false statement of fact concerning plaintiff.

74. On or about February 2, 2026, at approximately 10:50 PM Central Time, Defendant uploaded a video of his statement to the Facebook page of the online television platform.

75. In the video, Defendant publicly labeled Plaintiff a "cyber terrorist" and accused Plaintiff of hacking the Twitter(X) account of the Ameer of Jamaat-e-Islami.

76. These statements are false because Plaintiff did not hack the Twitter (X) account and is not a "cyber terrorist)."

77. Defendant knew these statements were false.

78. Defendant published the false statement to third parties.

79. Defendant uploaded the video containing the statement to the Facebook page of the online television platform at https://www. facebook.com/reel/1835743573804044.

80. The Facebook video was published to a wide audience through the television platform's Facebook page.

81. The false statement caused injury to Plaintiff's reputation.

82. The statement falsely accused Plaintiff of serious criminal conduct, specifically hacking and "cyber terrorism."

83. Such accusations are defamatory per se and injure Plaintiff's reputation in the community.

84. Plaintiff's social reputation has been seriously harmed as a result of the false statement.

85. Defendant acted with actual malice.

86. Defendant knew the statement was false at the time he made it because he had previously published forensic reports identifying a different suspect.

87. Plaintiff suffered damages.

88. As a direct and proximate result of Defendant's false and defamatory statement, plaintiff has suffered severe mental and emotional distress, serious harm to social reputation, extreme anxiety and disturbance to family life, substantial risk of adverse impact on current

employment, and reasonable fear of negative impact on immigration and residential status adjustment process.

89. Plaintiff is entitled to recover damages for the full extent of this mental anguish and emotional suffering, as well as for any associated medical expenses, loss of earning capacity, and other consequential losses. Defendant's conduct was willful, wanton, and performed with reckless disregard for Plaintiff's rights and dignity, thereby justifying an award of punitive damages to deter such conduct and to punish its egregious nature.

## THIRD CLAIM FOR RELIEF
### *DEFAMATION PER SE*
### *(Facebook Television Platform publication)*

90. The previous paragraphs are realleged and incorporated by reference.

91. Defendant made a false statement of fact concerning plaintiff.

92. On or about February 2, 2026, at approximately 10:30 PM Central Time, Defendant uploaded a video of his statement to his personal Facebook page.

93. In the video, Defendant publicly labeled Plaintiff a "cyber terrorist" and accused Plaintiff of hacking the Twitter(X) account of the Ameer of Jamaat-e-Islami.

94. These statements are false because Plaintiff did not hack the Twitter (X) account and is not a "cyber terrorist)."

95. Defendant knew these statements were false.

96. Defendant published the false statement to third parties.

97. Defendant uploaded the video containing the statement to his personal Facebook profile at https://www. facebook.com/reel/2711022405924041.

98. The Facebook video was published to a wide audience through the television platform's Facebook page.

99. The false statement caused injury to Plaintiff's reputation.

100. The statement falsely accused Plaintiff of serious criminal conduct, specifically hacking and "cyber terrorism."

101. Such accusations are defamatory per se and injure Plaintiff's reputation in the community.

102. Plaintiff's social reputation has been seriously harmed as a result of the false statement.

103. Defendant acted with actual malice.

104. Defendant deliberately and maliciously made false accusations against plaintiff despite knowing plaintiff was not involved in the hacking of of the Ameer's Twitter(X) account.

105. Plaintiff suffered damages.

106. As a direct and proximate result of Defendant's false and defamatory statement, plaintiff has suffered severe mental and emotional distress, serious harm to social reputation, extreme anxiety and disturbance to family life, substantial risk of adverse impact on current employment, and reasonable fear of negative impact on immigration and residential status adjustment process.

107. Plaintiff is entitled to recover damages for the full extent of this mental anguish and emotional suffering, as well as for any associated medical expenses, loss of earning capacity, and other consequential losses. Defendant's conduct was willful, wanton, and performed with reckless disregard for Plaintiff's rights and dignity, thereby justifying an award of punitive damages to deter such conduct and to punish its egregious nature.

## FOURTH CLAIM FOR RELIEF
### *INTENTIONAL INFLCITION OF EMOTIONAL DISTRESS*

108. The previous paragraphs are realleged and incorporated by reference.

109. Defendant made a false statement of fact concerning plaintiff.

110. Defendants' conduct as alleged was extreme and outrageous.

111. Defendant made false, malicious accusations against plaintiff, publicly labeling plaintiff a "cyber terrorist" and accusing plaintiff of serious criminal conduct, specifically hacking.

112. Defendant acted with intent to cause severe emotional distress or with reckless disregard for the probability of causing severe emotional distress.

113. Defendant knew or should have known that falsely accusing plaintiff of being a cyber terrorist and hacking would cause severe emotional distress.

114. Defendant acted with reckless disregard for the probability of causing severe emotional distress by making these false accusations despite knowing they were false

115. Defendant knew these statements were false.

116. Plaintiff suffered damages.

117. As a direct and proximate result of Defendant's false and defamatory statement, plaintiff has suffered severe mental and emotional distress, serious harm to social reputation, extreme anxiety and disturbance to family life, substantial risk of adverse impact on current employment, and reasonable fear of negative impact on immigration and residential status adjustment process.

118. Plaintiff is entitled to recover damages for the full extent of this mental anguish and emotional suffering, as well as for any associated medical expenses, loss of earning capacity, and other consequential losses. Defendant's conduct was willful, wanton, and performed with reckless disregard for Plaintiff's rights and dignity, thereby justifying an award of punitive damages to deter such conduct and to punish its egregious nature.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant as follows:

a. Compensatory damages against Defendant in an amount to be determined at trial for injury to reputation, emotional distress, and other harm caused by the defamatory statements on all three platforms.

b. Punitive damages against defendant pursuant to N.C. Gen. Stat. § 1D-15 in an amount to be determined at trial, but not to exceed the limits set forth in N.C. Gen. Stat. § 1D-25, for defendant's malicious, willful, and wanton conduct in deliberately making false accusations despite knowing plaintiff was innocent.

c. An order requiring Defendant to remove the defamatory statements from all social media platforms where they have been published, including YouTube and Facebook.

d. An order prohibiting Defendant from making further defamatory statements about plaintiff or publishing false accusations against plaintiff.

e. A declaratory judgment pursuant to 28 USCS § 2201 that Defendant's statements are false and defamatory and that plaintiff is innocent of the accusations of hacking and cyber terrorism.

f. Compensatory damages against Defendant in an amount to be determined at trial for severe emotional distress caused by Defendant's intentional infliction of emotional distress.

g. Costs of this action.

h. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

This, the 20th day of February 2026.

                                            By: s/Glenn Conway

                                            Glenn M. Conway
                                            N.C. Bar No. 60514
                                            **PARTON LAW, PLLC**
                                            122 North McDowell Street
                                            Charlotte, NC 28204
                                            Telephone: (704) 376-4488
                                            Facsimile: (704) 731-0904
                                            E-Mail: Conway@PartonNC.com
                                            *Attorneys for Plaintiff*